AO 106 (Rev. 04/10) Application for a Search Warrant

AUSA Jessica Kim

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

RICHARD W. NAGEL
CLERK OF COURT

2019 JAN 25 AM 10: 16

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 2:19 mj 068 |
| **The cellular telephone assigned call number 614-679-0788** | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B and/or attached Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. 242 | Deprivation of rights under color of law |
| 18 U.S.C. 1951 | Hobbs Act extortion |
| 18 U.S.C. 1503 / 1512 | Obstruction of justice / Witness tampering |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Robert D. Bogner, Task Force Officer, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __1-25-19__

_____
*Judge's signature*

City and state: __Columbus, Ohio__

Hon. Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:** | Case No. __2 : 1 9 mj0 6 8__ |
| **THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 614-679-0788** | **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Robert D. Bogner, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **614-679-0788,** with listed subscriber **Andrew K. Mitchell** (the "Target Cell Phone"), whose service provider is **Sprint**, a wireless telephone service provider headquartered at **6200 Sprint Parkway, Overland Park, KS 66251**. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3.      I am an Inspector with the Ohio Auditor of State (AOS), where I have worked since February 2015. As an AOS Inspector, I am responsible for conducting criminal investigations involving theft, theft in office, public corruption, and other violations of law. Since February 2017, I have been deputized as a Task Force Officer with the Federal Bureau of Investigation (FBI), Columbus Resident Agency for the Southern District of Ohio, Eastern Division. I am currently assigned to the Public Corruption Squad. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

4.      Prior to working as an AOS Inspector, I was a Special Agent with the Internal Revenue Service Criminal Investigation (IRS-CI) for 28 years. During that time, I investigated violations of the Internal Revenue laws and related offenses and was involved in numerous investigations involving violations of the United States Code. I have provided financial investigative expertise and assistance to various federal and local agencies, including the FBI, Drug Enforcement Administration (DEA), Bureau of Alcohol, Tobacco, and Firearms (ATF), and the Columbus Division of Police Narcotics Bureau.

5.      During my tenure as a Task Force Officer with the FBI, I have been assigned to work on various types of investigations, including public corruption, financial crimes, violent crimes, narcotics offenses, and money laundering. I have experience in the execution of search warrants and the debriefing of defendants, witnesses, informants, and other persons who have knowledge of various types of illegal activities. I have experience in the use of sophisticated investigative techniques to include electronic surveillance, GPS tracking devices, telephone tracking, and wiretaps.

6.     I, along with other agents and officers from the FBI, the Columbus Division of Police (CPD), the Ohio Bureau of Criminal Investigation (BCI), and the Ohio Auditor of State (AOS), have been investigating corruption in the Columbus Division of Police Department's Vice Unit involving CPD Vice Unit Detective Andrew K. Mitchell.  Over the course of this investigation, I have become familiar with the organization and structure of the CPD Vice Unit, as well as the nature and scope of the CPD Vice Unit's duties.

7.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 242 (deprivation of rights under color of law), 18 U.S.C. § 1951 (Hobbs Act extortion), 18 U.S.C. § 1503 (obstruction of justice), and 18 U.S.C. § 1512 (witness tampering) have been committed, are being committed, and/or will be committed by Andrew K. MITCHELL.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will further lead to the identification of additional individuals who are engaged in the commission of these offenses.

9.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is  a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10.     As briefly discussed above, the United States, including the FBI, is conducting a

3

criminal investigation of Andrew K. MITCHELL regarding possible violations of 18 U.S.C.

§ 242 (deprivation of rights under color of law), 18 U.S.C. § 1951 (Hobbs Act extortion), 18

U.S.C. § 1503 (obstruction of justice), and 18 U.S.C. § 1512 (witness tampering).

11.     Based on my training and experience, as well as information obtained from (i)

interviews with sources of information and other witnesses; (ii) investigative reports and arrest

records; (iii) federal and state law enforcement officers; (iv) public database searches; and (v) the

ongoing investigation of the CPD Vice Unit in this district, I am aware of the following facts.

### Background of Target

12.     Andrew K. MITCHELL has been a CPD officer since 1987.  During his tenure as

a police officer with CPD, MITCHELL has held a number of investigative assignments,

including serving as a detective in the Homicide Section (from March 2012 to May 2015) and

the Vice Unit.  MITCHELL is currently assigned as a detective in the Vice Unit, and has been in

this assignment since March 12, 2017.  During at least 2002, 2004, and 2005, MITCHELL was

sworn in as a Deputy Sheriff with the Franklin County Sheriff's Office.

13.     As secondary employment, MITCHELL owns and manages numerous rental

properties, the duties of which include maintenance and bookkeeping.  Since the 1990s, Mitchell

has owned at least 40 properties in the Central Ohio area, which he operates as apartments for

rent.

### Operational Background of CPD Vice Unit

14.     The CPD Vice Unit is charged with enforcing, among other things, prostitution-

related offenses.  Many of these offenses are misdemeanor violations under the Ohio Revised

Code.  Because of the nature of the offenses, and the types of crimes being investigated, CPD

4

Vice Unit detectives are given a broad amount of latitude while performing their duties, including working alone in their respective on-duty vehicles.

15.     Your Affiant is aware of the following CPD procedure for prostitution-related offenses: Once a CPD Vice Unit detective decides to take an enforcement action (*e.g.*, picking up a suspected prostitute for potential arrest), the CPD Vice Unit detective is supposed to radio for his/her partner or another backup officer, as well as begin audio recording within the vehicle. If the CPD Vice Unit detective determines that the elements are met for the offense of prostitution, the policy is to detain and transport the subject to a common location with other Vice Unit officers for the processing of paperwork. This location may be a parking lot or a fixed structure. If there are no outstanding warrants for the subject's arrest, the subject is given a summons and then released. If there are outstanding warrants for the subject's arrest, arrangements are made for the subject to be transported to a local correctional facility.

## Criminal Investigation Involving Witness 1

16.     On or about September 6, 2018, investigators received information from individuals overseeing the Franklin County Municipal Court's Changing Actions to Change Habits (CATCH) program indicating that serious crimes were being committed by a CPD officer.

17.     On or about September 7, 2018, investigators interviewed Witness 1, a CATCH court participant who was willing to speak to law enforcement to report a sexual assault. Witness 1 disclosed she had been a prostitute in the past and was currently in the CATCH court program.

18.     While working as a prostitute in the late summer to early fall of 2017, Witness 1

5

voluntarily entered a vehicle with the intent to engage in a sex act in exchange for money. Witness 1 described the vehicle as a Jeep-like, medium-sized SUV, similar to a Lincoln Navigator, with leather interior (color unknown) and a grab handle in the back. After Witness 1 and the man operating the vehicle negotiated a price for sex, the man pulled out a law enforcement badge, identified himself as a Vice Officer, asked if she was a cop, and then asked if she had active warrants for her arrest. Witness 1 recalled that the man asked for her name, date of birth, and then ran her for active warrants using one of his two cell phones. Witness 1 also recalled that the man was wearing black or blue basketball shorts with a gray or white line down the sides and a matching shirt. The man, who was light-skinned African-American, drove to a small park off of Briggs Road in Columbus (believed by your Affiant to be Lindbergh Park) and told Witness 1 that if she did not want to go to jail, she was going to have sex with him. Witness 1 agreed to have sex with the man because she did not want to go to jail, knowing that she had active warrants and was in possession of needles and a crack pipe.

19.     Witness 1 then got into the back seat of the vehicle, followed by the man. When told to reach behind her, Witness 1 complied, thinking that the man wanted her to grab his penis. The man, however, placed one handcuff on her wrist and then fastened the other handcuff to the grab handle over the passenger side rear door, at which point the man pulled down Witness 1's pants and began having vaginal sex with her. During vaginal sex, the man bit Witness 1's back, pulled her hair really hard, and was generally very rough with her. When he was finished, the man drove Witness 1 to a drug house to the area of Wayne Avenue and Mound Street where he allowed her to exit the vehicle. Initially, Witness 1 did not think the man who sexually assaulted her was actually a police officer. After the assault, however, Witness 1 spoke to other prostitutes in the drug house who warned her about the "light-skinned black man."

6

20.     A search of the Ohio Law Enforcement Gateway (OHLEG) database reveals that a black 2015 Lincoln Navigator, VIN #5LMJJ2JT1FEJ01610, Ohio license plate number GLX6189, is registered to MITCHELL's wife, Tanya Mclymont Mitchell, at 6249 Howard Road Sunbury, Ohio 43074. This vehicle has significant similarities to the vehicle described by Witness 1 used in the late summer/early fall of 2017 sexual assault.

21.     After the assault, Witness 1 was on the street working as a prostitute when she had an interaction with another prostitute, Witness 2. As a car drove past them, Witness 2 pointed to the car and warned Witness 1 not to enter the vehicle because the driver was a CPD Vice Unit Detective named "Andy Mitchell." Witness 2 told Witness 1 that "Detective Mitchell" might take you to jail or make you have sex with him instead of being arrested. Witness 2 said she knew the officer's name because he had written her a summons for Soliciting. (Your Affiant is aware that CPD records and the Franklin County Correctional Center management system indicate that MITCHELL issued a summons to Witness 2 on a specific date, which is documented by a numbered CPD report.)

22.     In or around June or July of 2018, Witness 1 was working as a prostitute when she voluntarily entered a vehicle with the intent of exchanging a sex act for money. Upon entering the vehicle, Witness 1 realized the driver was the same man that sexually assaulted her in the fall of 2017 and the person that Witness 2 had identified as CPD Vice Unit Detective Andrew MITCHELL. Witness 1 told investigators that MITCHELL was not driving the same vehicle as the day of the first assault. She described the vehicle as a black, 4-door, "nicer car" with a gray-black leather interior, a nice stereo system, and slightly tinted windows.

23.     MITCHELL asked Witness 1 if she had any active warrants, to which she responded "yes." He also asked her if she had any drugs, to which she responded "yes." When

7

Witness 1 tried to open the door to jump out, MITCHELL grabbed her hair to prevent her from leaving the vehicle and said he was taking her to jail. Witness 1 knew the arrest procedure and knew something was wrong because he did not call for a police officer.

24.     MITCHELL drove them to a park near Interstate 71 and Greenlawn Avenue (believed by your Affiant to be Berliner Park), where he parked and asked Witness 1 if she was going to make this easy or hard. MITCHELL pulled Witness 1's hair, turned her around in the front passenger seat, placed a handcuff on her wrist, fastened the other handcuff to the grab handle above the passenger side door, then forced his penis into her anus "hard." During the assault, MITCHELL turned up the car stereo and placed his hand over Witness 1's mouth when she began screaming.

25.     Witness 1 told investigators that as MITCHELL was penetrating her anus, he pushed her chest against the back of the passenger side front seat and forced her against the headrest, while placing his other hand on the headrest to brace himself, such that she could see MITCHELL's hand. Witness 1 noted that MITCHELL had swollen or rather large knuckles. Witness 1 also recalled that MITCHELL had an impression or indentation on his finger as though he had removed a ring that was on his finger for a period of time. She also remembered a black bag that was on the floor behind the driver's seat, which MITCHELL began to reach into prior to the sexual assault. She further recalled the seat material not being fabric but, rather, leather or something smooth, as she remembered "sticking" to them. She recalled seeing two cell phones that were sandwiched together in the center console cup holder of the vehicle. (Your Affiant knows that MITCHELL was issued a CPD cell phone and also had a personal cell phone (**assigned call number 614-679-0788**) during this timeframe.)

26.     When MITCHELL was finished, he unlocked the handcuffs using a pen-style

8

handcuff key. Witness 1 told investigators that her pants were off while the attack occurred, and

when MITCHELL had finished, he pulled up his pants and shoved her out of the vehicle, leaving

her in the public park without pants. Witness 1 stated that MITCHELL took her pants with him.

She described her pants as black leggings made of a stretchy material with a design on the legs.

Witness 1 also remembered that MITCHELL was wearing a T-shirt and what she described as

pants or shorts with pockets on the side (i.e., cargo pants/shorts) and smelled of expensive

cologne. She recalled that MITCHELL was wearing a baseball cap that was black and white in

color and had a bird "like an eagle" or something similar.

27.     On or about September 11, 2018, Witness 1 identified CPD Officer Andrew

MITCHELL from a photo array as the person who sexually assaulted her on two occasions as

described above.

28.     CPD payroll records reveal that MITCHELL's duty hours were 9:00am – 5:00pm

with Saturday and Sunday as his days off. Witness 1 indicated that the June/July 2018 sexual

assault occurred near dusk.

29.     A search of the Ohio Law Enforcement Gateway (OHLEG) database further

reveals that MITCHELL owns a dark gray 2013 Cadillac XTS, VIN #2G61P5S32D9107621,

Ohio license plate number EPJ9719 (purchased on May 18, 2015), registered to him at 6249

Howard Road Sunbury, Ohio 43074. This vehicle has significant similarities (i.e., 4-door,

darker, "nicer car" with slightly tinted windows) to the vehicle described by Witness 1 used in

the June/July 2018 sexual assault.

30.     On or about September 24, 2018, Witness 1 was shown an image of a 2013

Cadillac XTS by investigators. Witness 1 affirmed that the image depicted the vehicle that she

had been in when she was sexually assaulted by MITCHELL in June/July 2018. Witness 1

became visibly upset and began to cry after viewing the image of the vehicle.

## Criminal Investigation Involving Witness 3

31.     Previously, in the summer of 2018, the CPD Vice Unit and the New Salem Baptist Church Anti-Human Trafficking Ministry were collaborating on a project to address street prostitution in the North Linden area of Columbus, Ohio. During this project, on or about July 18, 2018, Witness 3 was arrested by another CPD Vice Unit detective and charged with soliciting. At the time of the arrest, Witness 3 provided the arresting officer with a false identity of her cousin, "Witness 6" Subsequently, the arresting officer processed an arrest information report and a misdemeanor summons utilizing the false information provided by Witness 3, which ordered "Witness 6" in Franklin County Municipal Court on July 27, 2018 at 9:00am.

32.     While Witness 3's arrest was being processed, a church volunteer witnessed MITCHELL siting in a chair and talking with Witness 3 Once Witness 3 was free to leave, the church volunteer informed Witness 3 of the social services New Salem Baptist Church Anti-Human Trafficking Ministry offered to women charged with prostitution offenses. During the conversation, the church volunteer asked if "Witness 6" was her real name and she responded no, and revealed her real name. Witness 3 told the church volunteer that she had only been out on the street a couple of years and that the African-American who was sitting next to her inside the church was one of her first tricks. According to the church volunteer, MITCHELL was the only African-American officer in the room.

33.     On or about August 15, 2018, the CPD Vice Unit conducted another street prostitution enforcement operation in collaboration with the New Salem Baptist Church. During the operation, Witness 3 was again arrested and charged with loitering to engage in solicitation

10

by another CPD Vice Unit detective. The arresting officer brought Witness 3 to the New Salem
Baptist Church for arrest processing. During the processing, Witness 3 told arresting officers
that she had been having a sexual relationship with a CPD officer named Andy Mitchell.

34.     As a result of the allegation described above, Witness 3 was interviewed by CPD
internal affairs sergeants and supervisory management. Approximately 4–5 years ago, Witness 3
met MITCHELL through her cousin, Witness 6, who rented an apartment from MITCHELL at
1994 or 1995 Denune Avenue, and later on Oakland Park. At the time, Witness 3 was in need of
an apartment and began renting 1993 Denune from MITCHELL for approximately 6–7 months.
(Your Affiant knows that MITCHELL has owned 1975 – 1999 Denune Avenue since May 16,
2000, and 1934 – 1940 Oakland Park Avenue from May 4, 1999 until it was sold on April 4,
2017.)

35.     Witness 3 told investigators that she began having sex for money when she began
abusing prescription pills. MITCHELL would take Witness 3 to his apartment on Oakland Park
that he called his "home away from home," where he would have vaginal sex with her, without a
condom, and pay her $40.00 each time. After sex, MITCHELL would take Witness 3 to her
apartment or a drug house to purchase pills. MITCHELL knew that Witness 3 used drugs, but
she never did drugs in front of him. When Witness 3 was in physical need of pills to feed her
drug habit, MITCHELL would drive her to a dope house to get pills before having sex. When
MITCHELL picked up Witness 3, he would always be driving his pickup truck or newer black
Cadillac.

36.     Witness 3 further told investigators that she knows that MITCHELL has rented
properties to at least two other prostitutes (Witness 4 and Witness 5), who were having sex with
MITCHELL for money.

11

37.     Witness 3 also told investigators that, while she was in custody at the Franklin County Correctional Center, a fellow inmate, Witness 5, approached her and stated that MITCHELL had called her and said that Witness 3 was "snitching" on him. As described above, the fellow inmate, Witness 5, was also a tenant of one of MITCHELL's properties.

38.     Witness 3 further told investigators that MITCHELL has also had sex with Witness 6 for money and believed that Witness 6 was still having contact with MITCHELL.

### Target's Rental Properties

39.     A search of the Franklin County Auditor and Recorders Office websites revealed that MITCHELL has purchased and/or sold over 40 rental properties since the 1990s. Records show that MITCHELL currently owns the following properties:

| | |
|---|---|
| 1260 Parsons Avenue | 1712-1716 Reinhard Avenue |
| 1975-1999 Denune Avenue | 2097 Paul Drive |
| 1179 East 20th Avenue | 1310 Miller Avenue |
| 500 Capital View Drive | 1311 Miller Avenue |
| 1854 Joan Place | 1315 Miller Avenue |
| 1680-1686 Reinhard Avenue | 1319-1321 Miller Avenue |
| 1692-1698 Reinhard Avenue | 1397 Miller Avenue |
| 1702-1708 Reinhard Avenue | |

Records further show that MITCHELL owns three additional parcels on Miller Avenue.

40.     The Franklin County Auditor's website shows the rental contact information as being "Andrew K. Mitchell, 6429 Howard Road, Sunbury, Ohio 43074," MITCHELL's primary residence.

### Target's Secondary Employment

41.     On or about January 31, 2017, MITCHELL submitted a secondary employment request with CPD for approval to work for Keller Williams. MITCHELL described himself as a

12

licensed real estate agent in the State of Ohio showing listed properties.

42.     On or about January 3, 2018, MITCHELL submitted a letter to the CPD Chief of Police requesting approval for secondary employment.  In the letter, MITCHELL stated he owned and operated numerous rental properties in the Columbus area and that his duties included bookkeeping, maintenance, and general property management.

43.     MITCHELL subsequently submitted a secondary employment/off-duty request, dated January 16, 2018, that described himself as "self-employed" with an employer address of "6429 Howard Road, Sunbury, Ohio 43074," MITCHELL's primary residence.

### Eviction Notices

44.     This investigation has identified several prostitutes who engaged in sex acts for money with MITCHELL and/or were tenants in MITCHELL's rental properties.  A search of Franklin County Municipal Court records revealed the following eviction notices were filed by MITCHELL, who used an address of "6429 Howard Road, Sunbury, Ohio 43074," MITCHELL's primary residence:

| DATE | EVICTION DEFENDANT | PROPERTY ADDRESS |
|---|---|---|
| 07/01/2014 | Witness 3 | 1999 Denune Avenue, #B |
| 10/13/2016 | Witness 6 | 1938 Oakland Park Avenue, Apt. B |
| 12/22/2016 | Witness 4 | 1938 Oakland Park Avenue, Apt. D |
| 12/08/2017 | Witness 4 | 1975 Denune Avenue |

### Social Media-Related Investigation

45.     During the course of this investigation, investigators have learned of at least two women who posted on social media that they had rented properties from MITCHELL, and that he had propositioned them for sex in exchange for rent.

46.     Evidence obtained during this investigation has revealed that MITCHELL is

13

connected with Witness 3, as well as Witness 5 and Witness 6 (discussed above), and other potential witnesses on Facebook (i.e., Facebook friends with).

### Additional Ongoing Investigation

47.     As of on or about January 24, 2019, investigators are aware of approximately twenty additional witnesses who have reported information regarding alleged misconduct by MITCHELL and/or other CPD Vice Unit officers.

48.     On or about September 26, 2018, a series of search warrants were judicially authorized by this Court regarding this investigation, including a search warrant for location information of the cellular telephone assigned call number **614-679-0788,** with listed subscriber **Andrew K. Mitchell** (the "Target Cell Phone"), whose service provider is **Sprint**, a wireless telephone service provider headquartered at **6200 Sprint Parkway, Overland Park, KS 66251**, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) (*See* 2:18-mj-736). The warrant was authorized for a period of thirty days, which expired on or about October 30, 2018. On or about October 30, 2018, the warrant was renewed for an additional period of thirty days. (*See* 2:18-mj-809.) On or about November 29, 2018, the warrant was renewed for an additional period of thirty days. (*See* 2:18-mj-877.) On or about December 28, 2018, the warrant was renewed for an additional period of thirty days, (*see* 2:18-mj-938), which expires on January 27, 2019.

49.     The judicially authorized warrant for location information for the Target Cell Phone (described above) has been helpful in establishing MITCHELL's location on multiple occasions, as well as to corroborate other evidence that has been uncovered in the investigation. For example, judicially authorized location information for the Target Cell Phone established

MITCHELL's location on January 6, 2019, January 7, 2019, and January 9, 2019 at or near the residence of a previously interviewed witness. Investigators believe that MITCHELL has been directing a known tenant and associate to contact the previously interviewed witness regarding another witness, in an attempt to tamper with his/her testimony.

50.     Additionally, the judicially authorized location information for the Target Cell Phone established MITCHELL's location on multiple occasions in the areas of his rental properties on Denune Avenue in Columbus, Ohio as recently as January 23, 2019 at 5:12pm and 5:28pm. Therefore, this warrant seeks a renewal and/or continuation of the previously authorized warrant for location information for the Target Cell Phone for an additional period of thirty days.

51.     In my training and experience, I have learned that **Sprint** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily

15

serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

52.     Based on my training and experience, I know that **Sprint** can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on **Sprint**'s network or with such other reference points as may be reasonably available.

53.     Based on my training and experience, I know that **Sprint** can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as **Sprint** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

54.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

55.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result,

as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

56. I further request that the Court direct **Sprint** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **Sprint.** I also request that the Court direct **Sprint** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **Sprint**'s services, including by initiating a signal to determine the location of the Target Cell Phone on **Sprint**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate **Sprint** for reasonable expenses incurred in furnishing such facilities or assistance.

57. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

58. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These

documents discuss an ongoing criminal investigation that is neither public nor known to all of

the targets of the investigation. Accordingly, there is good cause to seal these documents

because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Robert D. Bogner
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on January 25, 2019.

Honorable Chelsey M. Vascura
UNITED STATES MAGISTRATE JUDGE

18

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

1. The cellular telephone assigned call number **614-679-0788**, with listed subscriber(s) **ANDREW K. MITCHELL (**the "Target Cell Phone"), whose wireless service provider is **Sprint**, a company headquartered at **6200 Sprint Parkway, Overland Park, KS 66251**.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of **Sprint**, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

**ATTACHMENT B**

**PARTICULAR THINGS TO BE SEIZED**

### I. Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A

for a period of thirty days, during all times of day and night. "Information about the location of

the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude

data, and other precise location information, as well as all data about which "cell towers" (i.e.,

antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers)

received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter,

"Location Information") is within the possession, custody, or control of **Sprint**, **Sprint** is

required to disclose the Location Information to the government. In addition, **Sprint** must

furnish the government all information, facilities, and technical assistance necessary to

accomplish the collection of the Location Information unobtrusively and with a minimum of

interference with **Sprint**'s services, including by initiating a signal to determine the location of

the Target Cell Phone on **Sprint**'s network or with such other reference points as may be

reasonably available, and at such intervals and times directed by the government. The

government shall compensate **Sprint** for reasonable expenses incurred in furnishing such

facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this

warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18

U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 242 (deprivation of rights under color of law), 18 U.S.C. § 1951 (Hobbs Act extortion), 18 U.S.C. § 1503 (obstruction of justice), and/or 18 U.S.C. § 1512 (witness tampering) involving ANDREW K. MITCHELL.